IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SANDRA HUNDLEY                                                                                    PLAINTIFF

v.                            Civil No. 12-2065

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Sandra Hundley, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed her applications for DIB and SSI on June 11, 2007, alleging disability since December 31, 2006, due to depression, anxiety, bipolar disorder, post traumatic stress disorder ("PTSD"), carpal tunnel syndrome, low blood sugar, right knee problems, lower back problems, and narcolepsy. Tr. 25-26, 129-139, 179, 186, 219, 262, 889, 906-907. Her applications were initially denied and that denial was upheld upon reconsideration. Tr. 60-63, 80-92. An administrative hearing was held on February 19, 2009, and an unfavorable decision was rendered on June 8, 2009. Tr. 20-57, 767-804. On appeal, Plaintiff's case was remanded for further development of the record concerning Plaintiff's RFC. Tr. 753-761. A supplemental hearing was held on November 22, 2011. Tr. 719-752. Plaintiff was

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

AO72A
(Rev. 8/82)

present and represented by counsel. At the time of the supplemental hearing, Plaintiff was 45 years old and possessed the equivalent of a high school education and certification as a certified nurse aide ("CNA"). Tr. 23-24, 74, 180, 184, 722. She had past relevant work ("PRW") experience as a CNA and a vehicle escort driver. Tr. 898-905.

On December 6, 2011, the ALJ found that Plaintiff's bilateral CTS, osteoarthritis of the right knee, anterior cruciate ligament deficiency of the right knee, osteoarthritis of the lumbar spine, narcolepsy, bipolar disorder, attention deficit hyperactivity disorder, anxiety disorder, and alcohol dependency were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 696-700. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work involving only occasional climbing, balancing, crawling, kneeling, stooping, and crouching and occasional rapid flexion and extension of the wrists. Further, he concluded that Plaintiff could perform only work where the interpersonal contact is incidental to the work performed, where the complexity of the tasks is learned and performed by rote, with few variables and little judgment, and the supervision required is simple, direct, and concrete. Tr. 700-707. With the assistance of a vocational expert, the ALJ found Plaintiff could perform work as a sewing machine operator, production worker, and poultry processor. Tr. 708.

On October 17, 2011, the ALJ found Plaintiff's lumbar DDD status post fusion with radiculopathy, bilateral CTS, mood disorder, PTSD, and personality disorder to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 12-14. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, but must avoid frequent rapid, repetitive flexion/extension of the wrists bilaterally and is limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Further, he concluded that she was

2

able to perform work where the interpersonal contact was routine but superficial, the complexity of the tasks was learned by experience with several variables and judgment within limits, and the supervision required is little for routine but detailed for non-routine work. Tr. 14-18. With the assistance of a vocational expert, the ALJ found Plaintiff could perform work as an industrial order clerk, reconsignment clerk, traffic clerk, auction clerk, cashier at a check cashing agency, and a food checker. Tr. 19-20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 19, 2012. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 11, 13.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.   Discussion:**

Initially, we note that the ALJ did take note of the fact that based on a subsequent application for benefits, Plaintiff had been found to be disabled beginning on May 10, 2010. He also stated the he could find no "compelling reason to disturb the subsequent determination," and that his opinion was only relevant to the period beginning December 31, 2006, through May 10, 2010. However, our review of the evidence fails to reveal the significance of May 10, 2010, aside from that possibly being her alleged onset date in her subsequent application for benefits. The evidence actually suggests that Plaintiff's

impairments have worsened over time, making it important to review all of the evidence as a whole. Accordingly, we believe that remand is necessary as further assessment of the evidence is necessary to accurately determine Plaintiff's onset date.

The undersigned is also plagued by the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

As noted in our previous decision, the medical evidence revealed that Plaintiff suffered from carpal tunnel syndrome in the left wrist and left cubital tunnel syndrome, as well as osteoarthritis of the right knee. On October 2, 2007, x-rays of her right knee showed mild osteoarthritic changes involving the three compartments of the knee joint. Tr. 306.

An examination on July 31, 2008, revealed an inability to kneel with the right knee, and surgical scars on both knees. There was also some tenderness to palpation in the lumbosacral spine. Tr. 413-416.

5

In October, Dr. Keith Bolyard treated Plaintiff for right knee osteoarthritis status post significant old injuries with some instability. Tr. 377-378. She reported a history of knee problems with open meniscectomy and a torn anterior cruciate ligament. Dr. Axelsen had administered steroid injections, Plaintiff had participated in physical therapy, and Dr. Bolyard had performed an arthroscopy on her buckle handle tear of the lateral meniscus with grade four change of the medial femoral condyle and tibial plateau in 2004. Tr. 383-385, 420-446. On examination, Plaintiff exhibited full extension, full flexion, and an anterior cruciate ligament deficient knee. X-rays showed almost complete obliteration of the medial joint space with the medial much greater than the lateral compartment osteophytes. She had changes on the left as well. Dr. Bolyard gave her Lidocaine/Marcaine/Betamethasone injections and a prescription for a knee sleeve with hinges. He encouraged her to put off any type of surgical intervention as long as she could. Tr. 377-378.

On November 4, 2008, Plaintiff presented with chronic back and right knee pain. Tr. 395-396. Dr. Freeman ordered additional tests to follow-up. Tr. 395-396.

On December 30, 2008, Plaintiff had fallen off a chair onto her right knee two days prior. Tr. 388-389. She was unable to flex her knee all the way, and the knee was swollen and bruised. X-rays revealed joint effusion and moderately advanced osteoarthritic changes primarily involving the medial compartment of the knee joint space. Tr. 390. Plaintiff exhibited a full range of motion in her knee, but pain was evident. Dr. Freeman diagnosed her with knee pain and prescribed an ACE neoprene knee brace. She was told to continue the Ibuprofen, rest the knee, use the knee brace, continue with the ice, and elevate the knee. Tr. 388-389.

On March 24, 2009, Plaintiff underwent nerve conduction studies which revealed mild to moderate carpal tunnel syndrome on the left and ulnar neuropathy at the left elbow. Tr. 673-674, 681-682, 689-690.

6

On May 19, 2009, Plaintiff continued to experience difficulty with her left wrist and hand, and reported some discomfort in her right hand with gripping. Tr. 678-680, 686-688. She was also experiencing difficulty holding on to things. X-rays of her left hand and wrist showed no abnormality, but soreness at the wrist and some scant tenderness within the hand were noted on examination. Dr. Bolyard saw no thenar wasting or ulnar nerve distribution wasting in the hand, which was good. However, he did think she needed an ulnar nerve transposition, which could be done sub-muscularly. Tr. 678-680, 686-688. On June 1, 2009, Plaintiff underwent said surgery. Tr. 955-956. Although Plaintiff healed from the surgery, she continued to experience some tenderness and discomfort. Tr. 953.

On August 5, 2011, Plaintiff needed a referral to an orthopedic surgeon for an evaluation of her left elbow pain, with intermittent swelling for previous two years, and intermittent right knee pain. Tr. 1300-1303. An examination revealed tenderness to the left medial epicondyle, swelling to the left medial epicondyle with a decreased range of motion, a tingling sensation in the elbow, and tenderness to the patellar with a decreased range of motion.

On August 25, 2011, orthopedist Dr. Frankie Griffin evaluated Plaintiff. Tr. 1306. This examination revealed a right knee stable to varus and valgus stress and mild tenderness at the medal and lateral joint lines. X-rays showed no obvious fractures or dislocations but moderate degenerative joint disease ("DJD") globally involving the right knee. Dr. Griffin diagnosed Plaintiff with moderate DJD of the right knee, noting that she had already attempted all treatment options up to undergoing total knee replacement surgery. Plaintiff was referred back to Dr. Bolyard for a surgical referral.

On September 15, 2011, an EMG showed evidence of fairly significant carpal tunnel syndrome on the left side manifest by prolongation in the median motor distal latency, some slowing of the median nerve on the left side, prolongation of the ulnar sensory peak latency consistent with her previous ulnar neuropathy, and some residual changes. Tr. 1495-1497.

7

AO72A
(Rev. 8/82)

On September 30, 2011, orthopedic surgeon Dr. John Harp evaluated Plaintiff. Tr. 1517. She reported a long history of pain in her right knee dating back to an injury at age 12. Plaintiff indicated that her symptoms were made worse by any weightbearing activity. An exam revealed knee effusion and marked medial joint line tenderness, although the knee appeared stable to varus and valgus stress. X-rays showed isolated medial compartment disease with mild degenerative changes in the patellofemoral joint. Dr. Harp diagnosed her with mild to moderate joint disease of the medial compartment, and ordered an MRI. The MRI revealed knee effusion with a Baker cyst, a torn anterior cruciate ligament, torn and severely degenerated medial meniscus possibly with a small subluxed meniscal fragment toward the intercondylar notch, severe degeneration of the mid zone of the lateral meniscus, a flattened and probably free margin tear to the posterior horn of the lateral meniscus, strain of the medial collateral ligament, and a possible small ganglion posterior to the knee joint space. Tr. 1522-1523. Additional x-rays showed moderate to severe narrowing of the right knee joint space medially with mild subluxation of the femoral condyle with respect to the tibial plateau, spurs, and sclerosis as described above. Tr. 1523.

On October 14, 2011, after reviewing her MRI results, Dr. Harp opined that Plaintiff was not a candidate for unicondylar knee replacement. Tr. 1513. Accordingly, he recommend a total knee replacement.

Relying solely on the assessment of a non-examining, consultative doctor who found Plaintiff's physical impairments to be non-severe, the ALJ concluded that Plaintiff could perform light work involving occasional rapid and repetitive flexion and extension of the wrists. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). He dismissed her CTS symptoms and ignored her gradually worsening condition, stating that testing had revealed only mild to moderate CTS in her left wrist. However, the ALJ failed to consider more recent evidence indicating that Plaintiff did exhibit some range of motion limitations and grip strength deficiencies, and the results

8

of her latest EMG showing fairly significant carpal tunnel syndrome on the left side. We note that repetitive tasks that require bending of the wrists or *grasping with the hands*, including typing, cutting, sewing, playing a musical instrument, overuse of small hand tools, and use of vibrating tools are factors that can contribute to the development of CTS. *See* PHYSICIAN'S DESK REFERENCE, *Carpal Tunnel Syndrome*, http://www.pdrhealth.com/diseases/carpal-tunnel-syndrome (Last accessed February 25, 2013). It seems reasonable that an individual who is suffering from CTS might need to avoid these activities, which do not just involve the rapid and repetitive use of their wrists, in order to prevent further complications. Accordingly, we find remand is again necessary to allow the ALJ to reassess the limitations imposed by Plaintiff's CTS. Since Dr. Bolyard has refused to complete an assessment, the ALJ should attempt to obtain an RFC assessment from Dr. Harp. If Dr. Harp refuses to complete an assessment, then a consultative orthopedic examination with an RFC assessment must be ordered.

The evidence also indicates that Plaintiff's knee impairment has worsened over time, resulting in total knee replacement surgery in 2011. Instead, he dismissed the majority of Plaintiff's symptoms, stating that she had undergone only conservative treatment. However, he failed to consider the fact that her doctor had indicated that total knee replacement was her only real option, but due to her age, advised her to put it off as long as possible. Plaintiff was merely following her doctor's orders and exhausting all of her possible treatment options prior to surgery. Accordingly, we believe remand is also necessary to allow the ALJ to reconsider stooping, kneeling, crawling, climbing, walking and standing limitations that could result from her knee impairment. Again, this will require that he obtain an RFC assessment from an examining doctor.

We also note that the only mental RFC assessments contained in the record were completed by Dr. Kay Gale. On October 16, 2007, she diagnosed Plaintiff with ADHD, adjustment disorder with mixed disturbance of emotions and conduct, anxiety disorder not otherwise specified, pain disorder with psychological and general medical factors, and personality disorder not otherwise specified. Tr. 318-

9

335. Dr. Gale concluded Plaintiff had only mild restriction of activities of daily living and moderate limitations regarding social functioning and maintaining concentration, persistence, and pace. She also found Plaintiff to have moderate limitations with regard to understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and, interacting appropriately with the general public. Dr. Gale then stated that Plaintiff could perform work where the interpersonal contact was incidental to the work performed, the complexity of the tasks was learned and performed by rote with few variables and requiring little judgment, and the supervision required was simple, direct, and concrete. Tr. 318-335.

Records from Western Arkansas Guidance and Counseling Center indicate that although Plaintiff was compliant with treatment, she continued to experience bipolar symptoms. And, on March 17, 2010, she was treated in the emergency room for suicidal thoughts and depression. Tr. 945-951. Treatment records following this date reveal that Plaintiff's symptoms worsened.

On November 3, 2012, Dr. Gale completed a second assessment. Tr. 1021-1038. This time, she determined that Plaintiff would be markedly limited with regard to performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness. Dr. Gale stated as follows: "At this time she would have difficulty sustaining adequate relationships with others in a job setting, and she is felt to be unable to perform work within an acceptable time frame. "

10

We note, however, that the ALJ's RFC assessment does not take into account Plaintiff's ER visit, her most recent medical records, or Dr. Gale's most recent assessment. As our review of the medical evidence indicates that Plaintiff's mental impairments appear to have gradually worsened over the years, in spite of treatment, we believe that remand is also necessary to allow the ALJ to reevaluate the mental health evidence and Dr. Gale's most recent assessment.

### V. Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 20th day of March 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE